a man somewhat advanced in life, as is also Mrs. Lynch, his wife, the grandmother on the mother's side.  Frank F. Peterson, who has been appointed guardian, is 41 years old, and his wife, Mabel Burt Peterson, is 10 years younger.  They have no children.  The grandmother of the child on the father's side resides in the household of Mr. Peterson.  The Petersons own their own home in Jamestown and live well and seem to be in good circumstances.  Their house is new, having been built only about a year.  It is steam heated and equipped with electric lights and a bathroom.  There is a schoolhouse right near their home.  Mr. Peterson is engaged in the monument business at Jamestown.  Considering all these circumstances, we think the learned Surrogate exercised his discretion wisely in appointing Mr. Peterson guardian of the infant.  The welfare of the infant is the polestar which should guide courts in selecting a custodian for a minor child.  In this instance we think this rule was observed by the Surrogate.  We say this, however, without any reflection upon the family of the mother of this child, for, as we have already observed, they are respectable people, in comfortable circumstances in life.  The grandparents are, however, advanced in years, and in the natural order of things, even had Mr. Lynch been appointed guardian, he would have grown incompetent to bring up the child to manhood by reason of bodily infirmity.  For this reason, principally, we think it was the wiser course to select Mr. Peterson to perform that duty.

The decree of the Surrogate should be affirmed, without costs.

---

SCHOONMAKER v. NEW YORK, O. & W. RY. CO.   (No. 63/42.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

1. MASTER AND SERVANT ⬅103—INJURY TO SERVANT—LIABILITY.

 A stationary engineer and fireman in a cold storage and pumping plant, charged with the duty of operating the engine and pumps and making light repairs, such as replacing nuts, must repair, when supplied with proper tools, a defective valve stem as within the scope of his employment, and, where he fails to do so, he cannot recover for injuries while turning the valve.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. ⬅103.]

2. MASTER AND SERVANT ⬅103—INJURY TO SERVANT—LIABILITY.

 It is within the scope of the duties of a stationary engineer and fireman, in a cold storage and pumping plant, charged with the duty of making light repairs, to at least temporarily repair a defect in a door failing to latch properly; and where he fails to make repairs, and is injured by the door blowing open and then shutting and hitting him, he cannot recover, though he notified the foreman that the door would not latch.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. ⬅103.]

Appeal from Trial Term, Delaware County.

Action by James F. Schoonmaker against the New York, Ontario & Western Railway Company.  From a judgment for plaintiff, and from

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an order denying a new trial, defendant appeals. · Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

F. A. Taylor, of Hancock (C. L. Andrus, of Stamford, of counsel), for appellant.

· Stewart & Kelly, of Binghampton (Charles R. Stewart, of Binghampton, of counsel), for respondent.

HOWARD, J.   The plaintiff in this action was a "stationary engineer" and fireman.   He was employed in the cold storage and pumping plant of the defendant at Cadosia, Delaware county, in this state. He has recovered a judgment of $650 against the defendant, based on two alleged causes of action.   The first alleged cause of action arose in consequence of a door blowing open and then shut, hitting him and knocking him down upon the ground.   The second alleged cause of action arose when a wheel on a valve stem, which the plaintiff had grabbed hold of, came off, causing the plaintiff to lose his balance and fall over backwards.   The first accident happened on February 22, 1912, at about 7 p. m.   It was dark at the time.   It became necessary for the plaintiff to go outdoors to give attention to a steam valve outside.   At the place where the plaintiff went out, there were double doors.   One of them was bolted at the bottom and was seldom opened. The other door "was used to go in and out of."   It was through this doorway that the plaintiff went on the occasion of the accident.   The door opened inward.   When the plaintiff returned, the door blew open and then shut, hitting him, and causing the injury of which he complains.   Prior to the day of the accident the double doors had shrunk so that they would not latch.   Their failure to latch is the negligent condition complained of.   The door did not latch on the occasion in question, so the plaintiff alleges, although he pulled it shut behind him when he went out; and, being unlatched, the wind blew it open causing the accident.   The second accident happened on June 5th, following the first accident.   About two weeks before June 5th, it became necessary to make some repairs to the pumps.   At one end of the pumps some pipes were located under the floor.   In order to get at these pipes, it became necessary to take up the floor.   This floor was laid loose, not nailed down.   After the work had been finished, the men who had been employed by the defendant to make the repairs neglected to put back the boards which constituted the floor.   Over the spot where this flooring had been taken up stood an upright valve stem, with a wheel on top of the stem so that the valve could be opened and closed.   In making the repairs, the threads had been twisted off the upper end of the valve stem so that the nut which held the wheel on the stem could not be screwed on, and the wheel was left loose on the stem. The nut was one-half inch in size.   On the occasion of the second accident, the plaintiff took hold of the wheel and undertook to turn the valve.   The wheel came off, and he fell down and was injured again.

[1] The plaintiff was a stationary engineer and fireman.   He was something of a mechanic.   It was his duty not only to operate the en-

.gine and pumps but also to make light repairs. He says himself that, if anything got loose on the engine, it was his business to fix it. If nuts got off, it was his business to put them back on. If this had not been testified to, it stands to reason that it is so. He could not sit with his hands folded and permit little things, which needed repairing, to remain out of repair. He had the tools in the building to do such repairs with. It was his business to look about and see if such things needed to be done, and yet for two weeks he had failed to discover that the nut on this valve stem was loose. Had he discovered it, he could ·easily have repaired it. It would have been his duty to do so. This was, beyond question, within the scope of his employment, and the master cannot be held responsible.

[2] So insignificant a matter as the failure of the door to latch prop-·erly did not require the special attention of a skilled mechanic. Anybody with common judgment could adjust a thumb latch on a door. A few minutes' time and a few simple tools are all that is necessary— a screw-driver, perhaps, would be sufficient. The boards that were ·taken up by the mechanics, who were employed to fix the pumps, were not replaced when they· left. The plaintiff, however, sat idly by and permitted this opening in the floor, only 18 inches wide and a few feet long, to remain unclosed for two weeks while a small effort on his part would have put the floor back in the same condition that it was before the repairs were made. It seems to us that these trifling repairs, which were left undone, were also reasonably within the scope of the plaintiff's duties. He claims that he notified the defendant's foreman about the door and the fact that·it would not latch; but, even if he did do so, that would not relieve him of the duty of making the repairs himself, at least temporarily. The plaintiff was there to do something. Of ·course, his specific duties had never been exactly defined or his obligations precisely limited; but the ordinary fitness of things, as well as common fairness, required him to look after these little matters and take care of them himself. We cannot discover that the defendant has omitted any duty imposed upon it. The plaintiff was not seriously injured, and we believe it would be carrying the doctrine of negligence to an unreasonable extreme to allow the plaintiff to recover in this case.

The judgment and order should be reversed, and a new trial granted. All concur.